■ PATRICK A. THOMPSON et al., on Behalf of Themselves and All Others Similarly Situated, Respondents, v WHITE-STONE SAVINGS AND LOAN ASSOCIATION, Appellant.—In a class action, *inter alia,* for a judgment declaring illegal the defendant's method of amortizing mortgage principal balances prior to January 1, 1972, and to recover damages for fraud and conversion, the defendant appeals, as limited by its brief, from so much of an order of the Supreme Court, Nassau County (McCaffrey, J.), dated November 1, 1985, as failed to grant in its entirety its motion for summary judgment dismissing the complaint on the ground that it was barred by the Statute of Limitations.

Ordered that the order is modified, on the law, by (1) deleting the first decretal paragraph thereof, and substituting therefor a provision granting the defendant summary judgment dismissing the first cause of action with respect to the claims of all of the members of the class, except the plaintiffs whose mortgage balances were increased after May 11, 1976 by virtue of late payment penalties or annual service charges, and (2) deleting from the second and third decretal paragraphs thereof all references to the date "May 11, 1976" and substituting therefor the date "May 11, 1980". As so modified, the order is affirmed insofar as appealed from, without costs or disbursements.

The plaintiffs herein are a certified class of persons who had or still have mortgages with the defendant savings and loan association which were executed prior to January 1, 1972, and which obligated them to pay, in addition to monthly principal and interest, a monthly amount set by the defendant, equivalent to approximately one twelfth of the estimated annual taxes on the mortgaged real property (see, Thompson v Whitestone Sav. & Loan Assn., 101 AD2d 833, appeal dismissed 65 NY2d 636). The action, which was commenced on May 11, 1982, is based upon the method of accounting utilized by the defendant prior to 1972. Under this method, upon receipt of monthly mortgage payments, the defendant would apply the entire amount received to reduce the mortgage balance and accrued interest. When the defendant received the quarterly or semiannual tax bill for the property in question, it would pay the bill and add the amount paid to the balance of the mortgage. According to the plaintiffs, this caused their mortgage balances to be wrongfully and erroneously overstated, since the real estate tax obligations almost always exceeded the amount the defendant required the plaintiffs to pay by way of 12 monthly payments. In addition, according to the plaintiffs, the defendant wrongfully added annual service charges and late payment penalties to their mortgage balances, causing them to be further overstated. The defendant discontinued most of these allegedly improper practices in 1972, when it adopted a computerized system whereby the monthly tax payments were kept in a separate escrow account. At that time the defendant advanced each mortgagor a fixed amount to fund the escrow account. Upon information and belief, the defendant's practice of adding the annual service charges and late payment penalties to the mortgage balance exists at present.

The plaintiffs' first cause of action, characterized as one to recover damages for breach of contract, has a six-year Statute of Limitations (see, CPLR 213 [2]). The alleged breaches occurred each time the defendant, utilizing its pre-1972 method of accounting, failed to keep separate accounts for the payment of principal and interest and for monthly tax payments, and each time the defendant added a late payment penalty or service charge to the plaintiffs' mortgage balances. Thus, only those claims based upon allegations that late payment penalties or service charges were added to the mortgage balance of a plaintiff class member after May 11, 1976 are not time barred, since the action was not commenced until May 11, 1982. The court's determination that the mortgage accounts

constituted mutual, open and current accounts between the parties was erroneous *(see, Green v Disbrow,* 79 NY 1; *Donahue-Halverson, Inc. v Wissing Constr. & Bldg. Servs. Corp.,* 95 AD2d 953; *Sanger & Jordan v Duncan,* 196 App Div 55). Therefore, CPLR 206 (d) has no application at bar.

The plaintiffs' second cause of action is based upon actual fraud. "When the cause of action is premised upon actual fraud, the Statute of Limitations is six years from the commission of the fraud or two years from the time the plaintiff discovered or should have discovered the fraud, whichever is later" *(Bernstein v La Rue,* 120 AD2d 476, 478; *see,* CPLR 203 [f]; 213 [8]). Here the fraud alleged in the complaint was committed prior to 1972. In addition, as the court correctly concluded, the information contained in the mortgagor's passbook, coupled with the maturation or satisfaction of the mortgage beyond its maturity date, provided sufficient knowledge to suggest to a person of ordinary intelligence the probability that he might have been defrauded. Thus, when a plaintiff's mortgage extended beyond its maturity date, a duty to inquire arose with regard to that plaintiff, and started the running of the Statute of Limitations *(see, Erbe v Lincoln Rochester Trust Co.,* 3 NY2d 321; *Sielcken-Schwarz v American Factors,* 265 NY 239). Therefore, the claims of those plaintiffs whose mortgages were satisfied or matured prior to May 11, 1980, are time barred *(see,* CPLR 203 [f]; 213 [8]). However, as to the claims of the remaining plaintiffs, the court found, and we agree, that a question of fact exists as to whether or not those plaintiffs had knowledge of the relevant facts from which a duty to inquire would arise. Ordinarily the issue of whether the plaintiff was possessed of knowledge of facts from which fraud could reasonably be inferred involves a mixed question of fact and law *(see, Trepuk v Frank,* 44 NY2d 723; *Erbe v Lincoln Rochester Trust Co., supra).* "Where it does not conclusively appear that a plaintiff had knowledge of facts from which the fraud could reasonably be inferred, a complaint should not be dismissed on motion and the question should be left to the trier of the facts *(Dumbadze v Lignante,* 244 NY 1, 9; see *Azoy v Fowler,* 57 AD2d 541)" *(Trepuk v Frank, supra,* at 725). Thus, the court properly denied that branch of the defendant's motion for summary judgment which was to dismiss the second cause of action to the extent indicated.

The court properly granted that branch of the defendant's motion which was for summary judgment dismissing the third cause of action, which was based upon conversion, only with

respect to those plaintiff class members who satisfied their mortgages prior to May 11, 1979. The conversions did not occur, and thus the three-year Statute of Limitations *(see,* CPLR 214 [3]; *Sporn v MCA Records,* 58 NY2d 482, 488-489) did not begin to run, until the plaintiffs were required to pay more than they were originally obligated to pay.

Finally, the court properly refused to apply the doctrine of equitable estoppel to bar the defendant from asserting the Statute of Limitations as an affirmative defense *(see, Simcuski v Saeli,* 44 NY2d 442; *McIvor v Di Benedetto,* 121 AD2d 519), since the plaintiffs failed to establish the necessary elements of that doctrine *(see, Scharfman v National Jewish Hosp. & Research Center,* 122 AD2d 939; *Rains v Metropolitan Transp. Auth.,* 120 AD2d 509). Mangano, J. P., Niehoff, Spatt and Harwood, JJ., concur.